IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2018 AUG 22 PM 1:07

OFFICE OF THE CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>STEVEN MICHAEL BRAITHWAITE,<br>ADAM THOMAS BRAITHWAITE,<br>NEBRASKA RAILCAR CLEANING<br>SERVICES LLC,<br><br>          Defendants. | 8:18CR**216**<br><br>INDICTMENT<br><br>18 U.S.C. § 371<br>29 U.S.C. § 666(e)<br>42 U.S.C. § 6928(d) & (e)<br>18 U.S.C. § 1519<br>18 U.S.C. § 1621 |

## INDICTMENT

THE GRAND JURY CHARGES:

## COUNT ONE

### (Conspiracy)

At all times relevant to this Indictment:

*The Occupational Safety and Health Act*

1.     Congress enacted the Occupational Safety and Health Act (OSH Act) to reduce workplace injuries, illnesses, and deaths. 29 U.S.C. § 651 *et seq.*

2.     The Occupational Safety and Health Administration (OSHA) was an agency of the United States Department of Labor, and was responsible for the promulgation and enforcement of safety and health regulations covering federal and private sector workers throughout the United States.

3.     The OSH Act and its regulations required, among other things, that employers: (1) Evaluate confined space conditions for safety prior to allowing employees

1

to enter; (2) Not allow employees to enter a confined space where the internal atmosphere exceeds ten percent of its lower flammable (or explosive) limit (LEL); (3) Not allow employees to enter a confined space where the employees would be exposed to over ten parts per million (ppm) of benzene for fifteen minutes; (4) Complete a confined space entry permit that describes among other things the permit space to be entered, the purpose of entry, the authorized entrants, the hazards of the permit space, the acceptable entry conditions, and the results of initial and periodic tests; and (5) Train the entry attendant and the entry supervisor regarding, among other things, the hazards that may be faced during entry. 29 C.F.R. § 1910.146(b), (d), (f), (g), § 1910.1028(c)(2).

*The Resource Conservation and Recovery Act*

4.     The Resource Conservation and Recovery Act (RCRA) was enacted by Congress to address the problem of hazardous waste treatment, storage, and disposal in the United States. 42 U.S.C. § 6901 *et seq.* The intent of RCRA was to protect human health and the environment by requiring the proper and safe management of hazardous waste from the time it was created until the time it is disposed, and at all points between.

5.     RCRA regulated the generation, treatment, storage, transportation, and disposal of hazardous wastes by establishing a system of management standards, notifications, reports, manifests, and permits. This system of continually tracking hazardous waste is referred to as "cradle-to-grave" management.

6.     RCRA prohibited the treatment, storage, and disposal of hazardous waste without a permit issued under RCRA. RCRA permits are issued by the United States Environmental Protection Agency (EPA) or by an EPA-authorized state. At all times

relevant to this indictment, the State of Nebraska, through the Nebraska Department of Environmental Quality (NDEQ), was authorized to issue and enforce RCRA permits and regulations in the State of Nebraska. 42 U.S.C. § 6926; 50 Fed. Reg. 3345; 128 Neb. Admin. Code, Ch. 1, *et. seq*.

7.      The EPA was an agency of the United States, and was responsible for the promulgation and enforcement of environmental regulations in accordance with RCRA.

8.      RCRA required the EPA to identify and list "hazardous wastes." 42 U.S.C. § 6921. The term "hazardous waste" refers to substances and materials that are solid wastes and that are hazardous to people or the environment either by virtue of their characteristics, for example ignitability or toxicity, or because they are specifically listed by the EPA through published regulations. 40 C.F.R. § 261.20 *et seq.;* 128 Neb. Admin. Code §2- 004.02.

9.      A solid waste will exhibit the hazardous characteristic of ignitability if it ignites at less than sixty degrees Centigrade (140 degrees Fahrenheit) and thus presents a danger to human health or the environment. 40 C.F.R. § 261.21; 128 Neb. Admin. Code § 3-007.

10.      A solid waste will exhibit the hazardous characteristic of toxicity for benzene if an extract from a representative sample using the Toxicity Characteristic Leaching Procedure (TCLP) exceeds the regulatory level of 0.5 milligrams per liter (mg/L). 40 C.F.R. § 261.24; 128 Neb. Admin. Code § 3-010.

11.      Benzene is a carcinogen and has other adverse health effects, and is found in crude oil and other petroleum.

3

12.   Generators of solid waste are required to determine if their waste is either a listed hazardous waste or a characteristic hazardous waste. A solid waste generator may determine if the waste is characteristic hazardous either by testing the waste using the methods set forth in the RCRA regulations or by applying knowledge of the hazardous characteristic of the waste in light of the materials or the processes used. 40 C.F.R. § 262.11; 128 Neb. Admin. Code § 4-002.

13.   The term "treatment," when used in connection with hazardous waste, includes any method, technique, or process designed to change the physical, chemical or biological character or composition of hazardous waste so as to neutralize such waste or so as to render it nonhazardous or less hazardous or safer for transport. 42 U.S.C. § 6903(34); 128 Neb. Admin. Code § 1-131.

14.   The term "disposal" means the discharge, deposition, injection, dumping, spilling, leaking, or placing of any hazardous waste into or on any land or water so that such hazardous waste or any constituent thereof may enter the environment. 42 U.S.C. § 6903(3); 128 Neb. Admin. Code § 1-040. A generator of more than 100 kilograms (approximately 25 gallons or one-half a 55-gallon drum) of hazardous waste in a month is allowed to send its hazardous waste only to a disposal facility that is licensed under RCRA. 42 U.S.C. § 6928(d)(1).

*The Defendants*

15.   **Defendant Steven Michael Braithwaite** was the President and majority owner of **Defendant Nebraska Railcar Cleaning Services, LLC (NRCS)** and was

4

responsible for all phases of the business. **Steven Michael Braithwaite** handled environmental and worker safety issues for **NRCS**.

16. **Defendant Adam Thomas Braithwaite** was the second in command as the Vice President of Operations and part owner of **Defendant NRCS**, was involved in day-to-day management of its operations, and also handled environmental and worker safety issues for **NRCS**.

17. **Defendant NRCS** was incorporated under the laws of the State of Nebraska and did business in Omaha, Nebraska. **NRCS** was in the business of cleaning railcars, including rail tanker cars, for **NRCS** customers prior to repair and other work being performed on the railcars by other companies. The cleaning often involved **NRCS** sending in workers to scrape and remove various commodities from tanker cars including gasoline, ethanol, petroleum by-products, pesticides, herbicides, and food grade products. **NRCS** workers would scrape thicker material from the floor of the tanker cars and remove it by filling a bucket which was lifted through a "manway" at the top of the railcar and emptied into another container, and ultimately put into a dumpster. Rail tanker cars are "confined spaces" under the OSH Act. 29 C.F.R. § 1910.46(b).

18. In his capacity as President and owner of **Defendant NRCS** and other companies**, Defendant Steven Michael Braithwaite** had repeated contacts with OSHA officials. Those contacts included regulatory inspections during which OSHA officials notified **Stephen Michael Braithwaite** that **NRCS** was in violation of OSHA safety regulations concerning confined space entries and **Stephen Michael Braithwaite** promised to bring **NRCS** into compliance with the legal requirements.

19.   **Defendants Stephen Michael Braithwaite, Adam Thomas Braithwaite,**
and **NRCS** were "employers" under the OSH Act. 29 U.S.C. § 652(5).

20.   In May 2014, **Defendant NRCS** amended its Health and Safety Program,
which stated that employees were not permitted to be in a rail tanker car if the LEL
exceeded 10%.

21.   The **NRCS** Health and Safety Program required benzene testing where
benzene exposure could reasonably be expected, "[d]ue to the fact that BENZENE is
toxic, colorless … and is flammable …" and required warning signs where benzene was
present that stated:

DANGER
BENZENE
CANCER HAZARD
FLAMMABLE – NO SMOKING
AUTHORIZED PERSONNEL ONLY
RESPIRATORS REQUIRED IN THIS AREA

*2013 OSHA Inspection of NRCS*

22.   On or about July 31, 2013, OSHA inspected **Defendant NRCS** after
receiving complaints from employees about health and safety violations. OSHA found a
number of violations and issued, among others, a citation for violating the requirement
that entrants into confined spaces such as tanker cars monitor atmospheric conditions at
appropriate intervals during the entry.

23.   On or about February 5, 2015, **Defendant NRCS** entered into a Corrective
Action Agreement with OSHA, which **Defendant Steven Michael Braithwaite** signed
on behalf of **NRCS**. Under the Corrective Action Agreement, **NRCS** and **Steven**

6

**Michael Braithwaite** certified that **NRCS** had taken the following corrective action on

July 30, 2014:

> We are using Benzene as the limiting value. We are test (sic) the railcars prior to employee entrance for Benzene. We do not allow anyone in the tank until the reading is less than 5PPM which is 10 times the allowable TWA for Benzene and at the limit of our half-mask respirators. …

> The tank cars are monitored immediately prior to entrance by employees using a Multi-gas for 4 gasses (Oxygen, LEL, CO [Carbon Monoxide], and H2S [Hydrogen Sulfide]) and Draeger tubes [benzene tubes] for the presence of Benzene. Cars will have their atmospheres tested at low, medium, and high locations at least every hour while employees occupy the cars. If readings dictate the attendant will take readings on a more frequent basis.

24.   On or about March 4, 2015, OSHA attempted to conduct a follow-up

inspection of **Defendant NRCS**. **Defendant Steven Michael Braithwaite** denied OSHA

entry and stated **NRCS** had a new policy to deny entry to OSHA and the EPA for

inspections unless they had a warrant.

25.   On or about March 4, 2015, **Defendant Adam Thomas Braithwaite**

placed an order for **Defendant NRCS** to purchase benzene tubes from Company K, its

first purchase of benzene tubes.

26.   On or about March 25, 2015, OSHA obtained and served a warrant on

**Defendant NRCS**. During this inspection, OSHA requested certain records from

**Defendant Adam Thomas Braithwaite**, including respirator fit tests and employee

medical evaluations. Respirator fit tests and medical evaluations are required under the

OSH Act for all workers whose jobs require them to wear respirators. 29 C.F.R. §

1910.134.

27.     On or about April 1, 2015, after not having received the requested records,

OSHA sent **Defendant Adam Thomas Braithwaite** an email again requesting the

records and additionally requesting invoices for benzene tubes purchased by **Defendant**

**NRCS**.

28.     On or about April 6, 2015, **Defendant Adam Thomas Braithwaite**

emailed OSHA back, on which he copied **Defendant Stephen Michael Braithwaite**,

attaching records including benzene tube documents, respirator fit tests, and pulmonary

function tests (a type of medical evaluation):

> a.  Benzene tube document – namely a packing slip purporting to be from
>
>     Company K to **NRCS** and purporting to reflect an order for benzene tubes
>
>     placed on June 17, 2014 (and a shipping date of June 16, 2014) – was a
>
>     false document: Company K had not sold benzene tubes to **NRCS** before
>
>     March 4, 2015.
>
> b.  Respirator fit tests - dated July 11, 2014, November 28, 2014, December
>
>     19, 2014, and February 3, 2015 - were false documents and purportedly
>
>     bore the signature of an **NRCS** employee who did not perform the
>
>     respirator fit tests.
>
> c.  Pulmonary function tests - dated July 10, 2014, November 27, 2014,
>
>     December 18, 2014, and February 2, 2015 - were false documents and
>
>     purportedly reflected tests conducted on **NRCS** employees by Company L,
>
>     which in fact had not been conducted on those employees on those dates.

*2013 Nebraska Department of Environmental Inspection of NRCS*

29.    On or about June 26, 2013, the NDEQ conducted a hazardous waste

inspection of **Defendant NRCS.**

30.    During the inspection, **Defendant Stephen Michael Braithwaite** claimed

that **Defendant NRCS** did not generate any hazardous waste, but produced no

documentation of waste determinations when requested.

31.    On or about August 2, 2013, the NDEQ sent an inspection report to

**Defendant NRCS**, which explained that the company was required to conduct hazardous

waste determinations, including for crude oil, contaminated material, and ethanol. The

NDEQ report stated that crude oil may have characteristics that make it hazardous and

should be tested for ignitability and toxicity. Included with the report was an NDEQ

informational guidance document - "Waste Determinations & Hazardous Waste Testing"

-- that explained the hazardous waste determination requirements for all waste generators.

*2014 U.S. Environmental Protection Agency Inspection of NRCS*

32.    On or about July 9-10, 2014, the U.S. EPA conducted a RCRA inspection

of **Defendant NRCS**.

33.    During the inspection, **Defendant Stephen Michael Braithwaite** claimed

that he was making hazardous waste determinations for **Defendant NRCS** based on

"generator knowledge." **NRCS** did not test its waste to determine if it was hazardous.

The EPA inspector issued a notice of violation to **NRCS** for failure to make proper waste

determinations. The inspector also gave **Stephen Michael Braithwaite** the same

9

informational guidance document NDEQ had - "Waste Determinations & Hazardous Waste Testing."

34.   Based on its inspection, on or about October 29, 2014, the U.S. EPA issued a letter of warning to **Defendant NRCS** for failure to make proper hazardous waste determinations by testing its waste for hazardous qualities. EPA also issued **NRCS** an information request for documentation of hazardous waste determinations.

35.   **Defendant NRCS** failed to send EPA hazardous waste determinations before an explosion occurred on April 14, 2015.

36.   On or about April 16, 2015, **Defendant NRCS** collected samples from three rail tanker cars for testing whether waste from those railcars were hazardous. The Material Safety Data Sheets (MSDS) for the contents of two (railcars ACFX94580 and DBUX303094) of the three railcars identified the contents as ignitable; one of those two also tested positive for benzene above the RCRA limit, making the contents of those two railcars hazardous.

*The April 14, 2015, Explosion of Rail Tanker Car NATX303912*

37.   On or about January 27, 2015, **Defendant NRCS** received an inquiry about receiving and cleaning rail tanker car NATX303912, which included the MSDS for the product in the railcar, describing it as "natural gasoline," also known as "petrol, casing head gasoline, C5's." The MSDS listed the flammability rating as "severe" at class "4" (the highest rating), that the natural gasoline would ignite at 0 degrees Fahrenheit, and that it contained benzene, a "cancer hazard." **NRCS** responded that it could handle the material in the railcar.

10

38.   On or about March 25, 2015, **Defendants NRCS** and **Adam Thomas Braithwaite** received another email about rail tanker car NATX303912 which included the same MSDS sent on January 27, 2015.

39.   On or about April 14, 2015, **Defendant NRCS** prepared to clean residue from tanker car NATX303912, which contained "natural gasoline." During the morning, an employee of **NRCS** tested rail tanker car NATX303912 using a 4-gas meter, which showed that explosive gases greatly exceeded 10% of the LEL. Under **NRCS** policy and OSHA regulations, only if an LEL of less than 10% was reached could workers be sent into the rail tanker car, and after they were sent in continuous monitoring was required to ensure the LEL did not reach 10%.

40.   LEL levels for tanker car NATX303912 did not drop below 10% on April 14, 2015. Nonetheless, **Defendant NRCS** sent two of its employees into the tanker car. Continuous monitoring was not conducted. Approximately one hour later, its contents ignited and exploded, killing those two employees and injuring a third.

41.   **Defendant NRCS's** April 14, 2015, confined space entry permit for rail tanker car NATX303912 showed that the LEL level was 0 and that the benzene level tested at less than 5 ppm. Benzene was not tested for prior to or after entry of the deceased workers.

42.   On or about July 8, 2015, **Adam Thomas Braithwaite** was interviewed under oath by OSHA and Department of Labor representatives. He falsely stated that **Defendant NRCS** began using benzene tubes immediately after the 2013 OSHA inspection.

11

43.     Beginning on a date unknown and including from on or about February 2015 through in or about July 2015, in the District of Nebraska and elsewhere,

**Defendants**

**D-1 Stephen Michael Braithwaite**
**D-2 Adam Thomas Braithwaite**
**D-3 Nebraska Railcar Cleaning Services LLC**

unlawfully and knowingly conspired with each other and with other individuals, both known and unknown to the Grand Jury, to commit the following offenses against the United States: to defraud the United States and an agency thereof, to wit, to hamper, hinder, impair, impede, and obstruct, by trickery, deceit, and dishonest means, the lawful and legitimate functions of the U.S. Department of Labor and its agency, the Occupational Safety and Health Administration, in the administration and enforcement of worker safety and health laws at **Defendant NRCS.**

44.     The manner and means of the conspiracy included, but were not limited to the following:

> i.   It was part of the conspiracy that **Defendants Stephen Michael Braithwaite** and **Adam Thomas Braithwaite,** together with others known and unknown to the Grand Jury, created false documents to falsely portray that **Defendant NRCS** was complying with worker safety standards required by law and worker safety agreements reached with OSHA.
>
> ii.  It was further a part of the conspiracy that **Defendants Stephen Michael Braithwaite** and **Adam Thomas Braithwaite,** together with

12

others known and unknown to the Grand Jury, would orally

misrepresent to OSHA inspectors that **Defendant NRCS** was

complying with worker safety standards required by law and worker

safety agreements reached with OSHA.

1.      Overt Acts

45.   Overt acts committed in furtherance of the conspiracy and to effect the

illegal objects thereof included, but were not limited to, the following:

a.  On or about February 5, 2015, **Defendant Stephen Michael Braithwaite**
    signed a Corrective Action Agreement on behalf of **Defendant NRCS**
    which falsely stated that **NRCS** had been using benzene tubes since July
    2014.

b.  On or about March 4, 2015, **Defendant Stephen Michael Braithwaite**
    denied an OSHA inspector entry to **Defendant NRCS** when the inspector
    arrived to conduct a follow-up inspection.

c.  On or about March 4, 2015, **Defendant Stephen Michael Braithwaite** sent
    **Defendant Adam Thomas Braithwaite** a copy of the Corrective Action
    Agreement.

d.  On or about March 4, 2015, **Defendant Adam Thomas Braithwaite**
    placed an order on behalf of **Defendant NRCS** for benzene testing tubes.

e.  On or about April 2, 2015, **Defendant Adam Thomas Braithwaite**
    forwarded to **Defendant Stephen Michael Braithwaite** an email from

13

OSHA that repeated its request for certain health and safety documents it had not received.

f.  On or about April 6, 2015, **Defendant Adam Thomas Braithwaite** created and submitted to OSHA a false shipping document for benzene tubes.

g.  On or about April 6, 2015, **Defendant Adam Thomas Braithwaite** created and submitted to OSHA false respirator fit test results for **NRCS** employees.

h.  On or about April 6, 2015, **Defendants Stephen Michael Braithwaite** and **Adam Thomas Braithwaite** created and submitted to OSHA false pulmonary function test results for **NRCS** employees.

i.  On or about July 8, 2015, **Defendant Adam Thomas Braithwaite** falsely testified to OSHA and Department of Labor representatives that **Defendant NRCS** began using benzene tubes immediately after the 2013 OSHA inspection.

All in violation of Title 18, United States Code, section 371.

## COUNT TWO

### (Violation of Worker Safety Standard Causing a Worker Death)

46.  The Grand Jury realleges paragraphs 1 through 41 of Count One.

47.  On or about April 14, 2015, in Omaha, Nebraska, within the District of Nebraska, **Defendants**

**D-1 Stephen Michael Braithwaite**
**D-2 Adam Thomas Braithwaite**
**D-3 Nebraska Railcar Cleaning Services LLC**

14

knowingly and willfully violated standards promulgated pursuant to the OSH Act causing the death of an employee, namely they:

      a.  Allowed Employee H to enter a confined space where the internal atmosphere exceeded the proscribed limit of 10% of the lower explosive limit; and

      b.  Failed to train the entry supervisor regarding the hazards that may be faced during entry before allowing Employee H to enter a confined space.

In violation of Title 29, United States Code, section 666(e) and Title 18, United States Code, section 2.

## COUNT THREE

### (Violation of Worker Safety Standard Causing a Worker Death)

48.  The Grand Jury realleges paragraphs 1 through 41 of Count One.

49.  On or about April 14, 2015, in Omaha, Nebraska, within the District of Nebraska, **Defendants**

> **D-1 Stephen Michael Braithwaite**
> **D-2 Adam Thomas Braithwaite**
> **D-3 Nebraska Railcar Cleaning Services LLC**

knowingly and willfully violated standards promulgated pursuant to the OSH Act causing the death of an employee, namely they:

    a. Allowed Employee F to enter a confined space where the internal

atmosphere exceeded the proscribed limit of 10% of the lower

explosive limit; and

    b. Failed to train the entry supervisor regarding the hazards that may be

faced during entry before allowing Employee F to enter a confined

space.

In violation of Title 29, United States Code, section 666(e) and Title 18, United

States Code, section 2.

## COUNT FOUR

### (Knowing Endangerment in Violation of
### the Resource Conservation and Recovery Act)

50. The Grand Jury realleges paragraphs 1 through 41 of Count One.

51. On or about April 14, 2015, in Omaha, Nebraska, within the District of

Nebraska, **Defendants**

**D-1 Steven Michael Braithwaite**
**D-2 Adam Thomas Braithwaite**
**D-3 Nebraska Railcar Cleaning Services LLC**

did knowingly treat and cause to be treated hazardous waste (to wit, ignitable and toxic)

from railcar NATX303912, without a permit issued pursuant to RCRA, knowing at the

time that they did thereby place **NRCS** employees in imminent danger of death or serious

bodily injury.

All in violation of Title 42, United States Code, section 6928(e), and Title 18,

United States Code, section 2.

16

## COUNT FIVE

**(Illegal Treatment of Hazardous Waste in Violation
of the Resource Conservation and Recovery Act)**

52.   The Grand Jury realleges paragraphs 1 through 41 of Count One.

53.   On or about April 14, 2015, in Omaha, Nebraska, within the District of

Nebraska, **Defendants**

> **D-1 Steven Michael Braithwaite**
> **D-2 Adam Thomas Braithwaite**
> **D-3 Nebraska Railcar Cleaning Services LLC**

did knowingly treat and cause to be treated hazardous waste (to wit, ignitable and toxic)

from railcar NATX303912, without a permit issued pursuant to RCRA.

All in violation of Title 42, United States Code, section 6928(d)(2)(A), and Title

18, United States Code, section 2.

## COUNT SIX

**(Illegal Transportation of Hazardous Waste to an Unpermitted Facility
in Violation of the Resource Conservation and Recovery Act)**

54.   The Grand Jury realleges paragraphs 1 through 41 of Count One.

55.   On or about April 2015 in Omaha, Nebraska, within the District of

Nebraska, **Defendants**

> **D-1 Steven Michael Braithwaite**
> **D-2 Adam Thomas Braithwaite**
> **D-3 Nebraska Railcar Cleaning Services LLC**

did knowingly cause hazardous wastes from railcars ACFX94580 (ignitable and toxic)

and DBUX303094 (ignitable) to be transported to a disposal facility that did not have a

RCRA permit to dispose of hazardous waste.

All in violation of Title 42, United States Code, section 6928(d)(1), and Title 18,

United States Code, section 2.

## COUNT SEVEN

### (Transportation of Hazardous Waste without a Manifest
### in Violation of the Resource Conservation and Recovery Act)

56.   The Grand Jury realleges paragraphs 1 through 41 of Count One.

57.   On or about April 2015 in Omaha, Nebraska, within the District of

Nebraska, **Defendants**

> **D-1 Steven Michael Braithwaite**
> **D-2 Adam Thomas Braithwaite**
> **D-3 Nebraska Railcar Cleaning Services LLC**

did knowingly cause hazardous wastes from railcars ACFX94580 and DBUX303094 to

be transported without a manifest, which was required to be accompanied by a manifest.

All in violation of Title 42, United States Code, section 6928(d)(5), and Title 18,

United States Code, section 2.

## COUNT EIGHT

### (Falsification of Records in a Federal Investigation)

58.   The Grand Jury realleges paragraphs 1 through 41 of Count One.

59.   On or about April 6, 2015, in Omaha, Nebraska, within the District of

Nebraska, **Defendants**

**D-2 Adam Thomas Braithwaite**
**D-3 Nebraska Railcar Cleaning Services LLC**

did knowingly falsify and make a false entry into a record and document, to wit, a false

shipping record for benzene tubes, with the intent to impede, obstruct, and influence the

investigation and proper administration of a matter within the jurisdiction of a department

and agency of the United States, that is the Occupational Health and Safety

Administration within the U.S. Department of Labor.

All in violation of Title 18, United States Code, section 1519 and Title 18, United

States Code, section 2.

## COUNT NINE

### (Falsification of Records in a Federal Investigation)

60.   The Grand Jury realleges paragraphs 1 through 41 of Count One.

61.   On or about April 6, 2015, in Omaha, Nebraska, within the District of

Nebraska, **Defendants**

**D-2 Adam Thomas Braithwaite**
**D-3 Nebraska Railcar Cleaning Services LLC**

did knowingly falsify and make a false entry into a record and document, to wit, false

respirator fit tests for **NRCS** employees, with the intent to impede, obstruct, and

influence the investigation and proper administration of a matter within the jurisdiction of

a department and agency of the United States, that is the Occupational Health and Safety

Administration within the U.S. Department of Labor.

All in violation of Title 18, United States Code, section 1519 and Title 18, United

States Code, section 2.

19

## COUNTS TEN TO NINETEEN

### (Falsification of Records in a Federal Investigation)

62.   The Grand Jury realleges paragraphs 1 through 41 of Count One.

63.   On or about April 6, 2015, in Omaha, Nebraska, within the District of

Nebraska, **Defendants**

> **D-1 Stephen Michael Braithwaite**
> **D-2 Adam Thomas Braithwaite**
> **D-3 Nebraska Railcar Cleaning Services LLC**

did knowingly falsify and make a false entry into a record and document, to wit, false

pulmonary function tests for **NRCS** employees, with the intent to impede, obstruct, and

influence the investigation and proper administration of a matter within the jurisdiction of

a department and agency of the United States, that is the Occupational Health and Safety

Administration within the U.S. Department of Labor, as follows:

| Count | Type of Record | Date on Record | Date Created | Employee |
|---|---|---|---|---|
| **Ten** | Pulmonary Function Test | 2/2/2014 | 4/2015 | A |
| **Eleven** | Pulmonary Function Test | 7/10/2014 | 4/2015 | B |
| **Twelve** | Pulmonary Function Test | 7/10/2014 | 4/2015 | C |
| **Thirteen** | Pulmonary Function Test | 7/10/2014 | 4/2015 | D |
| **Fourteen** | Pulmonary Function Test | 11/27/2014 | 4/2015 | E |
| **Fifteen** | Pulmonary Function Test | 12/18/2014 | 4/2015 | F |
| **Sixteen** | Pulmonary Function Test | 12/18/2014 | 4/2015 | G |

| Seventeen | Pulmonary Function Test | 2/2/2015 | 4/2015 | H |
| Eighteen | Pulmonary Function Test | 2/2/2015 | 4/2015 | I |
| Nineteen | Pulmonary Function Test | 2/2/2015 | 4/2015 | J |

All in violation of Title 18, United States Code, section 1519 and Title 18, United States Code, section 2.

## COUNT TWENTY

### (Falsification of Records in a Federal Investigation)

64. The Grand Jury realleges paragraphs 1 through 41 of Count One.

65. On or about April 14, 2015, in Omaha, Nebraska, within the District of Nebraska, **Defendant**

### D-3 Nebraska Railcar Cleaning Services LLC

did knowingly falsify and make a false entry into a record and document, to wit, a Confined Space Entry Permit for railcar NATX303912 that falsely stated the lower explosive limit was 0 and that a benzene test had been conducted, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, that is the Occupational Health and Safety Administration within the U.S. Department of Labor.

All in violation of Title 18, United States Code, section 1519 and Title 18, United States Code, section 2.

21

## COUNT TWENTY-ONE

### (Falsification of Records in a Federal Investigation)

66.   The Grand Jury realleges paragraphs 1 through 41 of Count One.

67.   From on or about June to on or about September 2015, in Omaha, Nebraska, within the District of Nebraska, **Defendant**

### D-3 Nebraska Railcar Cleaning Services LLC

did knowingly falsify and make a false entry into a record and document, to wit, Confined Space Entry Permits that falsely stated that **Defendant NRCS** had tested the contents of rail tanker cars for benzene during the December 2014 – March 5, 2015 time period, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, that is the Occupational Health and Safety Administration within the U.S. Department of Labor.

All in violation of Title 18, United States Code, section 1519 and Title 18, United States Code, section 2.

## COUNT TWENTY-TWO

### (Perjury)

68.   The Grand Jury realleges paragraphs 1 through 42 of Count One.

69.   On or about July 8, 2015, in Omaha, Nebraska, within the District of Nebraska, **Defendant**

### D-2 Adam Thomas Braithwaite

having duly taken an oath before a competent officer of the U.S. Department of Labor during an investigation duly authorized by OSHA, a case in which 29 U.S.C. § 657(b) authorizes an oath to be administered, that he would testify truthfully, did voluntarily and intentionally and contrary to said oath state material matter which he did not believe to be true, that is to say:

70.    At the time and place OSHA was conducting an investigation into the practices and safety standards followed by **Defendant NRCS** to determine whether **NRCS** had violated 29 C.F.R. § 1910.1028 and the February 5, 2015, Corrective Action Agreement regarding the use of tubes to test for benzene before **NRCS** employees entered railcars. It was material to the aforesaid investigation to determine if and when **NRCS** had used benzene testing tubes.

71.    At the time and place described above, **Defendant Adam Thomas Braithwaite** appeared as a witness before OSHA, and then and there being under oath, testified falsely before OSHA regarding the described material matter as follows:

> Q. Other than a four gas monitor, have you known of any other air contaminate monitoring equipment used by Nebraska Railcar?
>
> A. I have Draeger tube – Draeger tubes.
>
> Q. And tell me what those are.
>
> A. It's for benzene, measures the benzene in the car.
>
> Q. And when did those start being used by Nebraska Railcar?
>
> A. <u>Since the first OSHA Investigation, that they approved of using the Draeger tubes for benzene, which was required</u>.

Q. Are you talking about the 2013 Inspection?

A. That's the first one, yeah. It's whenever that was an issue on the – in the Investigation. And then we settled, and they said we could use that versus buying a benzene monitor.

Q. Okay. And I understand that settlement was almost – maybe we'll see later, I don't know, but it was stemming from that –

A. We started to use that immediately because we didn't want to get in trouble not using that so…

72.   The above underscored testimony of **Defendant Adam Thomas Braithwaite,** as he then and there well knew and believed, was false in that **Defendant NRCS** had not used benzene tubes before March 5, 2015.

All in violation of Title 18, United States Code, section 1621 and Title 18, United States Code, section 2.

A TRUE BILL

The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

By:     DONALD J. KLEINE, #22669
        Assistant U.S. Attorney

KRISHNA S. DIGHE, P45376 (Michigan)
Senior Counsel
Environmental Crimes Section, U.S. DOJ